# IN THE UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF GEORGIA
# ATHENS DIVISION

| | |
|---|---|
| STEVEN MORRIS, individually, and STEVEN MORRIS as Surviving Spouse of PATRICIA MORRIS, deceased, and STEVEN MORRIS as the Administrator of the Estate of PATRICIA MORRIS, | JURY TRIAL DEMANDED |
| Plaintiff, | CIVIL ACTION FILE NO. 3:09-CV-74-CDL |
| v. | |
| HARLEY DAVIDSON MOTOR COMPANY, and GOODYEAR DUNLOP TIRES NORTH AMERICA, LTD., | |
| Defendants. | |

## PLAINTIFFS' FIRST REQUEST FOR ADMISSIONS TO DEFENDANT HARLEY

In compliance with FED. R. CIV. P. RULE 36 Defendant is required to admit the truth of the separately listed matters of fact and the genuineness of any attached documents on the 30th day after service of this request. As required by statute, Defendant is required to respond to this request in writing.

Defendant is specifically reminded that the separately listed statements of facts are deemed admitted unless, within 30 days after service of this First Request For Admissions to Defendant, Defendant serves a written answer or objection addressed to each fact.

The term **"Incident"** is defined to mean the May 13, 2008, event in which Plaintiffs were injured when the rear tire on their 2007 HD Ultra Classic catastrophically failed causing a wreck.

The term **"Plaintiff's Motorcycle"** is defined to mean the 2007 Harley Davison Ultra Classic, VIN#1HD1FC4157Y677627.

The term **"Similar Motorcycle"** is defined to mean **any touring motorcycle** manufactured by you that uses the same frame, swing arm, and rear tire (Dunlop D-402) as the **Plaintiff's Motorcycle, including, but not limited to, the Plaintiff's Motorcycle,** manufactured by you from the model year 2003 to the present.

The term "**Road Ready**" refers to a bike in condition to ride on the road (I.e., containing all fluids, battery, and a full fuel tank.)

The term "**Usable Weight**" refers to the amount of weight that a user can place onto a **Similar Motorcycle** including passengers, cargo, fuel, etc. and still be operating within the load limits of the respective tire and/or the GVWR (front and/or rear).

The term "**overloading**" refers to too much weight being placed onto the motorcycle in any manner so that the total weight of the motorcycle, including riders and cargo exceed the GVWR or the load index of any tire.

The term "**overweight**" means too much weight being placed onto the **Similar Motorcycle** in any manner so that the total weight of the motorcycle, including riders and cargo exceeds the GVWR or the load index of any tire.

The term "**Dry Weight**" means the shipping weight of **Plaintiff's Motorcycle** as referred to in the Owner's Manual for **Similar Motorcycles** supplied by Defendant.

The term "**Approved**" is defined as being established by authority or given authoritative approval.

## ADMISSIONS

1.

Harley-Davidson Motor Company Group, LLC is a wholly owned subsidiary of Defendant Harley.

2.

Harley-Davidson Motor Company Group, LLC was responsible for designing and testing **Plaintiff's Motorcycle**.

3.

Defendant was responsible for the contents of the owner's manual for **Plaintiff's Motorcycle**.

4.

Defendant was responsible for the actions or omissions of Harley-Davidson Motor Company Group, LLC at the time of the sale of **Plaintiff's Motorcycle**.

5.

Defendant was responsible for determining what items were included as "OEM" on **Plaintiff's Motorcycle**.

6.

Defendant chose the tires used as "OEM" tires on **Plaintiff's Motorcycle**.

7.

It is the intent of Defendant that the Owner's Manual for **Similar Motorcycles** provide the information the user needs to determine the **Road Ready** weight of their motorcycle without the need for weighing it.

8.

It is the intent of Defendant that the Owner's Manual for **Similar Motorcycles** provides all the information the user needs to avoid **Overloading** the motorcycle.

9.

Defendant has never issued, produced, or manufactured any warning label, decal, or placard that advised users of **Similar Motorcycle** of the specific amount of **Useable Weight** available to the user.

10.

It is the intent of Defendant that the Owner's Manual for **Similar Motorcycles** provide to the user the information necessary to determine the weight the owner can place onto the driver's seat without overloading the motorcycle.

11.

It is the intent of Defendant that the Owner's Manual for **Similar Motorcycles** provide to the user the information necessary to discern the weight the owner can place onto the motorcycle's passenger seat without overloading the motorcycle.

12.

Defendant has had no written communications with its dealers, other than in the Owner's Manuals, that specifically address the **Useable Weight** the owner can place onto **Similar Motorcycles** without overloading the motorcycle.

13.

Defendant has had no oral communications with its dealers that specifically address the **Useable Weight** the owner can place onto **Similar Motorcycles** without overloading the motorcycle.

14.

Defendant has had no written communications with its dealers, other than in the Owner's Manuals, to specifically address selling motorcycles to customers who either alone, or with a rider, are likely by virtue or their weight likely to be **Overweight.**

16.

It is foreseeable, as a result of Defendant's knowledge of the demographics of its customers, that a driver and passenger on a **Similar Motorcycle** will exceed the **Useable Weight** of the motorcycle.

17.

It is foreseeable, as a result of Defendant's knowledge of the demographics of its customers, that a driver and passenger with cargo for a weekend trip loaded in the standard storage containers on a **Similar Motorcycle** will exceed the **Useable Weight** of the motorcycle.

18.

Defendant has knowledge of single riders to whom its dealers have sold **Similar Motorcycles**, exceeding the Useable Weight limits of **Similar Motorcycles**.

19.

Defendant has no documentation of any efforts to warn users of **Similar Motorcycles**, of the Useable Weight limits and the dangers of exceeding the limits.

20.

Defendant has done field studies of its motorcycles in which it has attempted to weigh motorcycles, including **Similar Motorcycles**, at motorcycle rallies to determine the incidence of overloading and/or the tires being underinflated for the loads being carried.

21.

Defendant is aware of the results of studies done by Goodyear that included **Similar Motorcycles**, at motorcycle rallies to determine the incidence of overloading and/or the tires being underinflated for the loads being carried.

22.

Defendant is aware of more than one instance where a Dunlop D-402 tire has deflated while at highway speeds without any outside trauma known to have caused the deflation.

23.

Defendant was aware at the time of the sale of **Plaintiff's Motorcycle**, that riders were exceeding the **useable weight** limits of **Similar Motorcycles**.

24.

Other than information in the Owner's Manual and the load index on the tire, Defendant is not aware of any information provided to Plaintiff with the purchase of the **Plaintiff's Motorcycle**, that advised him about the weight limits for the tires and motorcycle.

24.

Defendant did not provide the **road ready** weight of **Plaintiff's Motorcycle** to Plaintiff in any written materials provided to him as part of his purchase of **Plaintiff's Motorcycle**.

25.

Defendant has investigated the potential use of a tire pressure monitoring system on **Similar Motorcycles**.

26.

Tom Berry was the lead engineer who investigated the viability of a tire pressure monitoring system on behalf of Defendant for use on **Similar Motorcycles**.

27.

Tom Berry determined that at the time **Plaintiff's Motorcycle** was manufactured that the technology to place a tire pressure monitoring system on both tube and tubeless tires alike did not exist.

28.

The "OEM" tires on **Plaintiff's Motorcycle** were tubeless tires.

29.

Tom Berry determined that at the time **Plaintiff's Motorcycle** was manufactured that the technology to place a tire pressure monitoring system on tubeless tires did exist.

30.

Defendant determined that it would not offer a tire pressure monitoring system on **Plaintiff's Motorcycle** even though it was possible to do so.

31.

A "OEM" tire pressure monitoring system on **Plaintiff's Motorcycle** would have increased the manufacturing cost of **Plaintiff's Motorcycle** by less than $100.00.

32.

Tom Berry did NOT investigate wireless tire pressure monitoring systems for use on **Similar Motorcycles**.

33.

Wireless tire pressure monitoring system technology WAS available to be placed as "OEM" equipment onto **Plaintiff's Motorcycle**.

34.

Wireless tire temperature monitoring system technology WAS available to be placed as "OEM" equipment onto **Plaintiff's Motorcycle**.

35.

Defendant did not consider the use of load cell technology to serve as "overweight" warning system **Similar Motorcycles** to warn the users of an **overweight** condition.

36.

Defendant did not consider the use of any type of sensor technology to place an "**overweight**" warning light onto **Similar Motorcycles** to warn the users of an **overweight** condition.

37.

Defendant did not consider the use of any type of sensor technology to place an "overweight" warning light onto **Similar Motorcycle** to warn the users of an overweight condition.

38.

Defendant determined the load index of the OEM tire used on **Plaintiff's Motorcycle**.

39.

Had Defendant requested it, Defendant Goodyear could have provided a rear tire for OEM use on **Plaintiff's Motorcycle** that had a higher load index

40.

The type of rear tire on **Plaintiff's Motorcycle** at the time of the **inciden**t (D-402) was the same as the OEM tire (D-402).

41.

Defendant has received information from Dunlop that the D-402 tire did not have a high enough load limit for use on motorcycles like or substantially similar to **Plaintiff's Motorcycle**.

42.

The Dunlop D-402 was the only "approved" OEM replacement tire for **Plaintiff's Motorcycle**.

43.

Defendant is aware that on **Similar Motorcycles** that tires are used while underinflated.

44.

Defendant is aware that on **Similar Motorcycles** that tires are used while overloaded.

45.

Defendant has gathered rider and cargo weight data on **Similar Motorcycles** specifically out of a concern that they were being run on underinflated tires.

46.

Defendant has gathered rider and cargo weight data on **Similar Motorcycle** specifically out of a concern that they were being run on **overloaded** tires.

47.

Defendant has collected data called "Touring Rider Demographics" for multiple years.

42.

Defendant has collected data regarding its clothing line sold by its dealers that includes the most popular size shirt size.

43.

2XL is the most popular shirt size sold by Defendant's dealers.

44.

The "**dry weight**" of a motorcycle only exists when the motorcycle is not rideable.

45.

Model years 2002-2008 of the Harley-Davidson touring models made by Defendant and **Similar Motorcycles** are substantially similar to each other in regards to the rear tire, rear wheel, rear tire, rear suspension geometry, load capacity, intended use, and swing arm.

46.

The 2009 model iteration of the **Plaintiff's Motorcycle** has a rear tire with a higher load index than **Plaintiff's Motorcycle**.

47.

The 2009 model iteration of the **Plaintiff's Motorcycle** has a higher weight capacity than **Plaintiff's Motorcycle**.

48.

The 2009 model iteration of the **Plaintiff's Motorcycle** has a higher weight GVWR than **Plaintiff's Motorcycle**.

49.

Defendant increased specified a rear tire with a higher load index for the 2009 model iteration of the **Plaintiff's Motorcycle** because it was aware that earlier models of **Similar Motorcycles** were being operated in an **overloaded** condition.

50.

Defendant increased the GVWR for the 2009 model iteration of the **Plaintiff's Motorcycle** because it was aware that earlier models of **Similar Motorcycles** were being operated in an **overloaded** condition.

51.

Defendant has never taken steps to prohibit or discourage the sales of its touring model motorcycles to people likely to **overload** the motorcycle.

52.

Defendant has never taken steps to prohibit or discourage the sales of its touring model motorcycles to obese people.

53.

Defendant has never provided its dealers with posters, videos, or materials of any kind other than Owner's Manuals designed to discourage the use of its touring model motorcycles to obese people.

54.

Without reference to the Owners Manual and performance of the computations required by the Owners Manual, Plaintiff had no reason to believe that **Plaintiff's Motorcycle** was **overloaded** at the time of the incident.

55.

The weight of **Plaintiff's Motorcycle** did not exceed the sum of the front tire load index plus the rear tire load index at the time of the **incident**.

56.

Assuming **Plaintiff's Motorcycle** is road ready, and has a driver in the front position who weighs 295 pounds, a passenger in the passenger position who weighs 225 pounds, 10 pounds in each saddle bag and 25 pounds in the

trunk, this Defendant is unable, without the use of scales, to determine the load on the rear tire or rear axel.

57.

Defendant does not provide a total "maximum weight capacity" for riders and cargo on the **Plaintiff's Motorcycle** or in the Owner's Manual for **Plaintiff's Motorcycle.**

58.

The GAW number in the Owner's Manual for **Plaintiff's Motorcycle** is of no use to a rider unless he is able to determine the weight on the axels.

59.

The Owner's Manual for **Plaintiff's Motorcycle** gives no guidance as to how Plaintiff is supposed to determine the weight on the axels to see if the motorcycle is within the GAW limits.

60.

This Defendant is aware that at least one manufacturer of a touring motorcycle puts the "maximum weight capacity" of cargo and riders in its Owner's Manual and on its motorcycle.

61.

If **Plaintiff's Motorcycle** is road ready, and has a driver in the front position who weighs 295 pounds, a passenger in the passenger position who

weighs 225 pounds, 10 pounds in each saddle bag and 25 pounds in the trunk, it is unsafe to use.