UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

STEVEN MORRIS, individually,
and STEVEN MORRIS as Surviving
Spouse of PATRICIA MORRIS,
deceased, and STEVEN MORRIS as
the Administrator of the Estate of
PATRICIA MORRIS,

        Plaintiff,

                                CIVIL ACTION
vs.                             FILE NO.:  3:09-cv-74(CDL)

HARLEY DAVIDSON MOTOR
COMPANY and GOODYEAR
DUNLOP TIRES NORTH
AMERICA, LTD.,

        Defendants.
_____/

**HARLEY-DAVIDSON'S MOTION FOR
PARTIAL SUMMARY JUDGMENT REGARDING
<u>PLAINTIFF'S INADEQUATE WARNINGS CLAIM</u>**

Defendant, HARLEY-DAVIDSON MOTOR COMPANY GROUP,

LLC (improperly identified in Plaintiff's First Amended Complaint as

Harley Davidson Motor Company) ("Harley-Davidson"), pursuant to

Federal Rule of Civil Procedure 56, files this Motion for Partial Summary

Judgment regarding Plaintiff's claim that Harley-Davidson failed to provide adequate warnings with respect to the motorcycle at issue in this action.[1]

## I.    INTRODUCTION

This product liability action arises from a single motorcycle accident which occurred on May 13, 2008 while Plaintiff, Steven Morris, was operating a 2007 Harley-Davidson Ultra Classic motorcycle with his wife as a rear passenger.  See Doc. No. 28 at ¶¶6, 13.  Plaintiff has alleged strict liability and negligence claims against Harley-Davidson relating to the 2007 Harley-Davidson Ultra Classic motorcycle ("subject motorcycle"). Plaintiff's product liability claims include, in part, allegations that Harley-Davidson failed to provide adequate warnings to Plaintiff.  However, Mr. Morris admitted in his deposition that although he was provided with an Owner's Manual and warnings with his motorcycle, he did not read the Owner's Manual or warnings.  Given Mr. Morris' clear admissions, there can be no genuine issue of material fact with respect to Plaintiff's failure to

---

[1] No confidential, proprietary, trade secret materials are necessary for the Court to consider and rule upon Harley-Davidson's Motion for Partial Summary Judgment.  The only materials necessary for the Court's consideration are the transcript of the deposition of Steven Morris and the owners' manual for the subject motorcycle.  Neither of these documents contain confidential, proprietary, trade secret information.

warn claims.  Accordingly, under settled Georgia law, Harley-Davidson is entitled to summary judgment on Plaintiff's failure to warn claims.

## II.    FACTS

### A.    Description of Accident

On May 13, 2008, Plaintiff was operating a 2007 Harley-Davidson Ultra Classic motorcycle with his wife as a rear passenger on Interstate 20 in Morgan County, Georgia.  See Doc. No. 28 at ¶ 13.  The subject motorcycle was equipped with tires manufactured by Codefendant, Goodyear Dunlop Tires North America, Ltd. ("Dunlop").  Plaintiff was pulling a trailer in direct contravention of the clear warnings provided in the Owner's Manual and on the motorcycle.  See Deposition of Plaintiff (attached as Exhibit "A"), page 328, lines 6-10.  Plaintiff alleges that as he was driving eastbound on Interstate 20 in the right-hand lane, the rear tire on his motorcycle failed causing the subject accident.  See Doc. No. 28 at ¶ 13.

Mr. Morris testified that the back end of the motorcycle suddenly "started swerving left and right."  See Deposition of Plaintiff, page 322, lines 21-23 and page 325, lines 7-9.  He testified that he put his left leg down touching the road to keep the motorcycle from going left.  See Deposition of Plaintiff, page 324, lines 8-12 and page 325, lines 24-25.  The motorcycle

3

then went to the right into the grass shoulder and immediately went down on its left side.  See Deposition of Plaintiff, page 325, lines 8-12 and page 326, lines 9-16.  As a result of the accident, Patricia Morris was killed and Mr. Morris was injured.  See Doc. No. 28 at ¶ 14.

The subject motorcycle has a Gross Vehicle Weight Rating ("GVWR") of 1,259 pounds.  See Excerpts from the Owner's Manual attached hereto as Exhibit "B" at p. 19.  The subject motorcycle also has a front Gross Axle Weight Rating ("GAWR") of 500 pounds and rear GAWR of 827 pounds.  *Id.*  The Owner's Manual states that the weight of the motorcycle as shipped from the factory is 808 pounds.  *Id.*  Thus, the motorcycle is rated to carry an additional 451 pounds which includes the weight of the rider, passenger, accessories and cargo.  It is undisputed that with the weight of fuel and the accessories installed on this motorcycle at Plaintiff's direction the subject motorcycle weighed over 900 pounds unloaded.

At the time of the subject accident, Plaintiff claims he weighed 250 pounds and that his wife, Patricia Morris, weighed 204 pounds.  See

4

Deposition of Plaintiff, page 232, lines 6-24.[2]  Therefore, Plaintiff and Mrs. Morris, by themselves, exceeded the motorcycle's GVWR of 1,259 pounds.

Given the amount of cargo that Plaintiff testified he was carrying at the time of the accident, it is clear that the motorcycle's GVWR was significantly exceeded.  Deposition of Plaintiff, page 237, line 2 – page 240, line 14.

In three separate places, the Owner's Manual contains a warning which expressly states:

> Do not exceed the motorcycle's Gross Vehicle Weight Rating (GVWR) or Gross Axle Weight Rating (GAWR).  Exceeding these weight ratings can affect stability and handling which could result in death or serious injury.
> - GVWR is the sum of the weight of the motorcycle, accessories, and the maximum weight of the rider, passenger, and cargo that can be safely carried.
> - GAWR is the maximum amount of weight that can be safely carried on each axle.
> - The GVWR and GAWR are shown on the information plate located on the frame steering head.

Exhibit "B" at pp. 6, 8, and 59.

The Owner's Manual also contains a warning in two places which states:

---

[2] The Plaintiff's admission records from Atlanta Medical Center produced by Plaintiff state that his weight on the day of the accident was 312 pounds.  *See* ATL MED CTR 00045.

> Do not pull a trailer with a motorcycle.  Pulling a
> trailer can cause tire overload, reduced braking
> efficiency and adversely affect stability and
> handling, which could result in death or serious
> injury.

*Id.* at pp. 6, 9.  Additionally, there are labels and warnings on the motorcycle itself which state the GVWR and warn operators not to overload the subject motorcycle and to never pull a trailer with the motorcycle.  These warnings in the Owner's Manual and on the motorcycle itself notified Plaintiff of the maximum load that could be safely carried on the motorcycle, that overloading could result in death or serious injury and to never pull a trailer.

While Harley-Davidson believes that the warnings provided with the subject motorcycle were adequate, the adequacy of the warnings does not matter in this case because Plaintiff admitted that he did not read them.

### B.    Allegations in First Amended Complaint

Plaintiff's First Amended Complaint includes claims of strict liability and negligence against Harley-Davidson and Dunlop.[3]  Plaintiff's claims against both Defendants relate to the allegation that the rear tire manufactured by Dunlop "experienced a sudden and catastrophic deflation resulting in loss of control of the motorcycle."  See Doc. No. 28 at ¶ 13.

---

[3] Plaintiff also seeks punitive damages based upon the alleged strict liability and negligence claims.

6

While the allegations of Plaintiff's Amended Complaint are somewhat verbose and repetitive, in sum Plaintiff's allegations against Harley-Davidson are that:

(1)   the motorcycle was incapable of being safely used by Plaintiff with his passenger and cargo load;

(2)   Harley-Davidson failed to include warnings and instructions to warn Steven Morris that the rear tire was losing air or underinflated;

(3)   Harley-Davidson failed to warn Steven Morris that with himself, his passenger and cargo, the rear tire was overloaded; and

(4)   Harley-Davidson failed to take steps to discourage sales of motorcycles to riders who were likely to overload the motorcycle.

According to Plaintiff's Supplemental Response to Harley-Davidson's First Interrogatories, Plaintiff does not claim any manufacturing defect in the subject motorcycle.   See Plaintiff's Supplemental Response to Harley-Davidson's First Interrogatories No. 1 (attached as Exhibit "C").   Rather, Plaintiff contends that the subject motorcycle was defectively designed

because it should have been designed to carry heavier loads.  *Id.*  Associated with this design defect claim is Plaintiff's allegation that Harley-Davidson failed to provide adequate warnings to Plaintiff regarding the load capacity of the motorcycle.  Plaintiff's First Amended Complaint alleges in both the strict liability and negligence counts that Harley-Davidson failed to provide adequate warnings and instructions to Plaintiff.  See Doc. No. 28 at ¶ 19, 30.

**C.    Mr. Morris admitted in his deposition that he did not read the provided warnings.**

The subject motorcycle, purchased new by Mr. Morris, came with warnings and instructions which were contained in the Owner's Manual and on the motorcycle itself.  Mr. Morris admitted in his deposition that he did not read any of the warnings that were provided with the subject motorcycle.

Q.    Did you ever read any of the warnings that were provided with the 2007 motorcycle we're here on today?

A.    I didn't see anything that led me to any warnings, so no, I did not.

Deposition of Plaintiff, page 172, lines 8-12.

Mr. Morris testified that he received the Owner's Manual that came with the motorcycle, but he did not read the Owner's Manual.

Q.    Did you get an owner's manual with the bike that we're here on today?

8

      A.     Yes, I did.

      Q.     Did you read it?

      A.     No.

Deposition of Plaintiff, page 168, lines 17-21. Therefore, Mr. Morris admitted that he did not read the Owner's Manual that was provided with the motorcycle. In fact, Mr. Morris testified that he never took the Owner's Manual out of the wrapping that it came in. Regarding the Owner's Manual that came with the subject motorcycle, Mr. Morris testified:

      Q.     Did you ever open it from the cellophane wrapper?

      A.     No.

      Q.     Left it wrapped up in the wrapper.

      A.     Yes.

Deposition of Plaintiff, page 275, lines 8-12.[4]

---

[4] It should be noted that during his deposition, Plaintiff was shown the warnings in the Owner's Manual relating to load capacity, tire inflation and the warnings against pulling trailers. Plaintiff testified that he understood these warnings and that if he had read them he would have understood them before the accident. See Deposition of Plaintiff, page 278, line 9- page 301, line 9. For example, when asked about the warnings in the Owner's Manual relating to pulling a trailer, Mr. Morris testified:

Q. You understand what that means.

A. I understand what that says, yes.

Q. And does it say that you're allowed and that you should pull a trailer with this motorcycle, or does it say do not pull one?

A. If you read it, it says do not pull.

In addition to the Owner's Manual, the motorcycle itself contains warning labels.  As stated above, Plaintiff also failed to read these warnings.  Deposition of Plaintiff, page 172, lines 8-12.  For example, Plaintiff admitted that although there was an orange warning label in the tour pack of the subject motorcycle, he did not read it before the accident.  Deposition of Plaintiff, page 172, line 13- page 173, line 9.  Similarly, the motorcycle frame's steering head contains an information plate which contains certain warnings and information.  Mr. Morris testified that although he was aware of the information plate on the steering head, he did not read it.

> Q.     Do you know where that information plate is?
>
> A.     I know there's an information plate that's got a lot of stuff on it, but I don't know if it has that on it.

---

Q. And if you had read that you would have understand that Harley-Davidson tells you not to pull a motorcycle with this bike; correct?
A. Correct.
Deposition of Plaintiff, page 288, line 25- page 289, line 9.

Similarly, Mr. Morris testified that if he had read the warnings regarding the correct tire pressure, he would have understood them.
Q. And if you'd read the manual you would have known that the correct tire pressure for your bike the morning you left would have been 36 front and 40 rear because of solo and a passenger; correct?
A. I believe that's what it was.
Q. Okay. The answer is yes, sir?
A. That's what it says on this section, yes.
Q. And you understand that.
A. Yes.
Deposition of Plaintiff, page 300, lines 11- 22.

Q.      Do you know that it has tire pressure on it?

A.      No, I don't.  I don't know what's on the plate.

Q.      So you never took the time to look at the plate, even.

A.      No, because nobody told me I needed to look at it.

Deposition of Plaintiff, page 286, line 22- page 287, line 9.  Mr. Morris'
testimony makes clear that although the subject motorcycle came with
warnings in the Owner's Manual and on the motorcycle itself, Mr. Morris
did not read any of those warnings but if he had he would have understood
them.

## III.   ARGUMENT

### A.     Summary Judgment Standard

Summary judgment is appropriate "if the pleadings, the discovery and
disclosure materials on file, and any affidavits show that there is no genuine
issue as to any material fact and that the movant is entitled to a judgment as
a matter of law."  Federal Rule of Civil Procedure 56(c); *Anderson v. Liberty
Lobby, Inc.*, 477 U.S. 242, 247 (1986).

To avoid entry of summary judgment, the non-moving party is
required to identify specific facts which demonstrate that there is a genuine
issue for trial and the non-moving party may not rest on the allegations or

denials in its pleadings. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, (1986); *Zimmerman v. Cherokee County,* 925 F. Supp. 777, 780 (N.D. Ga. 1995). Conclusory allegations will not defeat summary judgment. *Bennett v. Parker,* 898 F.2d 1530, 1534 (11th Cir. 1990); *Bates v. Hunt,* 3 F.3d 374, 378-79, N.7 (11th Cir. 1993). Merely colorable evidence or evidence not significantly probative will not defeat a properly supported summary judgment motion; nor will a mere scintilla of evidence suffice. *Boim v. National Data Products, Inc.*, 932 F. Supp. 1402, 1403 (M.D. Fla. 1996). Similarly, affidavits setting forth legal conclusions cannot be treated as factual support in opposition to a motion for summary judgment. *Bates*, 3 F.3d at 378-79, N. 7.

Instead, the non-moving party must offer evidence from which a fair-minded jury could return a verdict for that party after examining the record as a whole. *Anderson*, 477 U.S. at 248. The issues of fact raised by the non-moving party must be genuine, not speculative. *Scott v. Harris*, 550 U.S. 372 (2007).

**B.     Georgia law does not permit a failure to warn claim where plaintiff failed to read the warnings provided with the product.**

Under Georgia law, a plaintiff's failure to read a product's warnings extinguishes proximate cause in a failure to warn claim.  Georgia courts have held that where the plaintiff does not read the product's warning, any inadequacy in the warning cannot be the proximate cause of the injuries; thus the product manufacturer is entitled to summary judgment on a defective warning claim.  *Henry v. General Motors Corp.,* 60 F.3d 1545 (11th Cir. 1995) ("Under Georgia law, a product user's failure to read an allegedly negligent warning, not the warning itself, is considered the proximate cause of an injury resulting from product misuse."); *Dozier Crane & Machinery, Inc. v. Gibson*, 644 S.E.2d 333 (Ga. Ct. App. 2007) ("Generally, where there is no evidence that a plaintiff read the allegedly inadequate warning, causation cannot be shown."); *Wilson Foods Corp. v. Turner*, 460 S.E.2d 532, 534 (Ga. Ct. App. 1995) (finding that because the plaintiff failed to read any of the warnings, the defendant was entitled to a partial directed verdict "as to a products liability claim grounded upon an inadequacy of warning by reason of the insufficient, inaccurate or misleading nature of the content of the warning"); *Powell v. Harsco Corp.*,

13

433 S.E.2d 608 (Ga. Ct. App. 1993) (holding that the alleged inadequacy of installation instructions cannot be the proximate cause of the accident where the installer did not read the instructions); *Cobb Heating & Air Conditioning Co., Inc. v. Hetron Chemical Co.*, 229 S.E.2d 681, 683 (Ga. Ct. App. 1976) ("This court has held that any insufficiency of the warning on the label of a product may not be the proximate cause of the [accident] when the user fails to read the label.").

In *Henry v. General Motors*, the plaintiff was severely injured when a truck fell off a jack and hit him. *Id.* at 1546. The jack had a sticker that contained several warnings. *Id.* at 1547. The plaintiff was aware that the sticker had warnings, but he could not read the warnings because he was illiterate. *Id.* General Motors moved for partial summary judgment with regard to the plaintiff's failure to warn claims based on the fact that the plaintiff did not read the warning. *Id.* The Eleventh Circuit stated that, "Under Georgia law, a product user's failure to read an allegedly negligent warning, not the warning itself, is considered the proximate cause of an injury resulting from product misuse." *Id.* at 1548. The Court granted General Motors' motion for summary judgment, finding that it had to apply Georgia law even though the plaintiff was illiterate. *Id.*

14

Similar to *Henry v. General Motors*, the court in *Powell* found that the manufacturer of a fiberglass grate catwalk was entitled to summary judgment, because the installer of the catwalk did not read the instructions that were provided. *Powell*, 433 S.E.2d at 608.   In *Powell*, the plaintiff drowned when the fiberglass grate catwalk that he was standing on collapsed.  *Id.* at 609.  The plaintiff brought a product liability action against the catwalk manufacturer alleging that the warnings and instructions provided were inadequate.  *Id.*  The installer testified that he had not read the installation instructions or the literature provided with the catwalk.  *Id.* at 610.  The court stated:

> Whether proceeding under a strict liability or a negligence theory, proximate cause is a necessary element of appellant's case.   The alleged inadequacy of the installation instructions cannot be the proximate cause of the collapse of the catwalk and Mr. Powell's death when the installer did not read the installation directions.

*Id.* (internal citations omitted).  Because the court found as a matter of law that proximate cause did not exist, the court held that the defendant was entitled to summary judgment with respect to the inadequate warnings claims.  *Id.*

15

    **C.**    **Harley-Davidson is entitled to summary judgment regarding Plaintiff's inadequate warnings claims.**

As stated above, Mr. Morris testified clearly that he failed to read the warnings in the Owner's Manual or the warnings on the motorcycle itself. Under Georgia law, the adequacy of a product's warnings cannot be the proximate cause of an accident where the plaintiff fails to read the warnings. Because Mr. Morris clearly admitted in his deposition that he did not read the warnings provided with the motorcycle, there can be no genuine issue of material fact with regard to Plaintiff's failure to warn claims. Therefore, Harley-Davidson is entitled to summary judgment dismissing Plaintiff's inadequate warnings claims with prejudice.

## IV.   CONCLUSION

WHEREFORE, Defendant, Harley-Davidson Motor Company Group, LLC, respectfully requests that this Honorable Court enter Partial Summary Judgment in its favor with respect to Plaintiff's inadequate warnings claims,

16

and to award costs and such other relief in Harley-Davidson's favor as the
Court deems just.

This 12th day of April, 2010.

Respectfully submitted,

s/Ernest H. Eubanks, Jr.
Ernest H. Eubanks, Jr.
Georgia Bar ID 842529
Steven I. Klein
Georgia Bar ID 842530
RUMBERGER, KIRK & CALDWELL, PA
Post Office Box 1873
Orlando, Florida  32802-1873
(407) 872-7300 Office
(407) 841-2133 Facsimile
*Admitted Pro Hac Vice*

**and**

Johnathan T. Krawcheck
Georgia Bar No. 429320
Brannon J. Arnold
Georgia Bar No. 218034
WEINBERG, WHEELER, HUDGINS,
GUNN & DIAL, LLC
950 East Paces Ferry Road, Suite 3000
Atlanta, Georgia  30326
(404) 832-9512 Office
(404) 875-9433 Facsimile

Attorneys for Defendant, Harley-Davidson
Motor Company Group, LLC (improperly
named in Plaintiff's First Amended

17

Complaint as Harley Davidson Motor Company)

## **<u>CERTIFICATE OF SERVICE</u>**

I HEREBY CERTIFY that on April 12, 2010, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following: **Michael J. Warshauer,** mjw@warpoe.com, **Douglas C. Dumont**, dcd@warpoe.com, **Alfred B. Adams, III**, al.adams@hklaw.com, and **John M. Hamrick**, john.hamrick@hklaw.com.

s/Ernest H. Eubanks, Jr.
ERNEST H. EUBANKS, JR.
Georgia Bar ID 842529
STEVEN I. KLEIN
Georgia Bar ID 842530
RUMBERGER, KIRK & CALDWELL, PA
Post Office Box 1873
Orlando, Florida  32802-1873
(407) 872-7300 Office
(407) 841-2133 Facsimile
*Admitted Pro Hac Vice*

**and**

Johnathan T. Krawcheck
Georgia Bar No. 429320
Brannon J. Arnold
Georgia Bar No. 218034
WEINBERG, WHEELER, HUDGINS,

GUNN & DIAL, LLC
950 East Paces Ferry Road, Suite 3000
Atlanta, Georgia  30326
(404) 832-9512 Office
(404) 875-9433 Facsimile

Attorneys for Defendant, Harley-Davidson Motor Company Group, LLC (improperly named in Plaintiff's First Amended Complaint as Harley Davidson Motor Company)