IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

| | | |
|---|---|---|
| STEVEN MORRIS, individually, as surviving spouse of Patricia Morris, deceased, and as the Administrator of the Estate of Patricia Morris, | *<br>*<br>* | |
| | * | CASE NO. 3:09-CV-74 (CDL) |
| Plaintiff, | * | |
| vs. | * | |
| HARLEY DAVIDSON MOTOR COMPANY and GOODYEAR DUNLOP TIRES NORTH AMERICA, LTD., | *<br>* | |
| Defendants. | * | |

O R D E R

This product liability action arises from a single motorcycle accident in which the rear tire of Plaintiff Steven Morris's motorcycle failed, resulting in a crash that killed Plaintiff's wife and left Plaintiff seriously injured. Plaintiff brings claims for negligence and strict liability under Georgia law against Defendants Harley Davidson Motor Company ("Harley-Davidson") and Goodyear Dunlop Tires North America, Ltd. ("Dunlop"), contending, among other things, that Defendants failed to provide an adequate warning regarding the dangers of overloading the motorcycle.[1] Harley-Davidson contends that it is entitled to summary judgment as to Plaintiff's failure to warn

---

[1] Plaintiff misidentified Harley-Davidson in his Amended Complaint; the proper party Defendant in this case is Harley-Davidson Motor Company Group, LLC. (Harley-Davidson's Mot. for Partial Summ. J. 1.)

claim and filed this presently pending Motion for Partial Summary Judgment (Doc. 75). For the following reasons, the Court finds that genuine issues of material fact exist as to Plaintiff's failure to warn claim, and therefore, Harley-Davidson's motion is denied.

## SUMMARY JUDGMENT STANDARD

Summary judgment may be granted only "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). In determining whether a *genuine* issue of *material* fact exists to defeat a motion for summary judgment, the evidence is viewed in the light most favorable to the party opposing summary judgment, drawing all justifiable inferences in the opposing party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). A fact is *material* if it is relevant or necessary to the outcome of the suit. *Id.* at 248. A factual dispute is *genuine* if the evidence would allow a reasonable jury to return a verdict for the nonmoving party. *Id.*

## FACTUAL BACKGROUND

The facts viewed in the light most favorable to Plaintiff reveal the following.

**I.   The 2007 Harley-Davidson Ultra Classic Motorcycle**

This action arises from an accident involving Plaintiff's 2007 Harley-Davidson FLHTCU Ultra Classic Electra Glide motorcycle ("Ultra Classic"). The Ultra Classic is a touring motorcycle suited for long distance travel with two riders. (Hulsey Dep. 13:19-14:9, Jan. 7, 2010; Lewis Dep. 18:12-19:11, Jan. 7, 2010.) The Ultra Classic in this case was equipped with tires co-developed by Dunlop and Harley-Davidson. (Wright Dep. 109:16-20, 111:11-112:17, Feb. 9, 2010.)

The Gross Vehicle Weight Rating ("GVWR") for the Ultra Classic is 1,259 pounds. (Ex. B to Harley-Davidson's Mot. for Partial Summ. J., Owner's Manual at 19 [hereinafter Owner's Manual].) The Ultra Classic, as shipped from the factory, weighs 808 pounds. (*Id.*) Therefore, with a full tank of gas weighing 31 pounds (McGowan Dep. 101:5-13, Feb. 8, 2010), the Ultra Classic's GVWR allows for an additional 420 pounds of weight capacity for the rider, any passenger, cargo, and accessories.

**II.  The Single Motorcycle Accident**

On May 13, 2008, Plaintiff, who weighed 250 pounds, was operating his Ultra Classic on Interstate 20 in Morgan County, Georgia with his wife, Patricia Morris, who weighed 204 pounds, riding as a rear passenger. (Ex. A to Harley-Davidson's Mot. for Partial Summ. J., Pl.'s Dep. 232:6-24, Nov. 18, 2009.) Plaintiff was also pulling a trailer. (*See id.* at 328:6-10.) During the ride, the

3

rear tire of the Ultra Classic failed, resulting in a crash that killed Plaintiff's wife and severely injured Plaintiff. Just two days before the accident, a Harley-Davidson dealer installed nitrogen to the proper pressure in both tires. (*Id.* at 317:8-318:6.)

**III. The Warnings**

When Plaintiff purchased the Ultra Classic, he was provided with an owner's manual ("Owner's Manual"), which contained warnings and instructions regarding the Ultra Classic. (Pl.'s Dep. 168:17-19, 278:9-279:23.) Specifically, the Owner's Manual warned against exceeding the GVWR:

> **Do not exceed the motorcycle's Gross Vehicle Weight Rating (GVWR) or Gross Axle Weight Rating (GAWR). Exceeding these weight ratings can affect stability and handling, which could result in death or serious injury. (00016e)**
>
> - GVWR is the sum of the weight of the motorcycle, accessories, and the maximum weight of the rider, passenger and cargo that can be safely carried.
> - GAWR is the maximum amount of weight that can be safely carried on each axle.
> - The GVWR and GAWR are shown on the information plate located on the frame steering head.

(*E.g.* Owner's Manual at 6.) The Owner's Manual also warned against pulling a trailer: "**Do not pull a trailer with a motorcycle. Pulling a trailer can cause tire overload, reduced braking efficiency and adversely affect stability and handling, which could result in death or serious injury.**" (*E.g.*, *id.*) Plaintiff never read the Owner's Manual. (Pl.'s Dep. 168:17-21, 169:18-20.)

4

In addition to the warnings in the Owner's Manual, there were also warnings on the Ultra Classic. One warning was located inside the Tour-Pak, a storage compartment on the back end of the Ultra Classic, over the rear wheel, and behind the passenger's seat, which stated:

> Too much weight in Tour-Pak can cause loss of control. Death or serious injury could occur.
> - Do not put more than 25 pounds in Tour-Pak.
> - See Accessories and Cargo section of Owner's Manual for more information.

(Pl.'s Resp. to Harley-Davidson's Mot. for Partial Summ. J. 9.) The Ultra Classic also contained an information plate on the steering head, which listed the Ultra Classic's GVWR, recommended tire pressures, and other information. (*Id.* at 7-8.) Plaintiff testified that he did not see these warnings; thus, he did not recognize them as a source of safety information. (Pl.'s Dep. 172:8-173:24, 286:13-287:9.)

There were no warnings on the Ultra Classic that alerted a user that it was rated to carry only 420 pounds, including the rider, any passenger, cargo, and accessories. Plaintiff testified that he would have understood warnings about overloading the Ultra Classic had they been adequately communicated to him. (*Id.* at 285:3-24.)

DISCUSSION

Under Georgia law, a manufacturer can breach its duty to warn in two ways: "(1) [by] failing to adequately communicate the warning to

5

the ultimate user or (2) [by] failing to provide an adequate warning of the product's potential risks." *Wilson Foods Corp. v. Turner*, 218 Ga. App. 74, 75, 460 S.E.2d 532, 534 (1995) (internal quotation marks omitted). To prevail on a failure to warn claim, the plaintiff must show that the defendant's failure to warn proximately caused the injury. *Id.*

Here, Plaintiff brings his failure to warn claim under the first prong; in other words, Plaintiff contends that Harley-Davidson breached its duty to warn by failing to communicate adequately the warnings regarding the dangers of the Ultra Classic such that an operator could read and understand them. Harley-Davidson contends that Plaintiff's failure to warn claim fails as a matter of law because Plaintiff did not read the warnings in the Owner's Manual or the warnings on the Ultra Classic. (*See* Harley-Davidson's Mot. for Partial Summ. J. 13-16; *see also* Harley-Davidson's Reply in Supp. of its Mot. for Partial Summ. J. 2-6.)

Harley-Davidson misconstrues the nature of Plaintiff's failure to warn claim. Harley-Davidson attempts to frame Plaintiff's claim as one where the plaintiff-user alleges that the language of the defendant-manufacturer's warning was inadequate to apprise him or her of the danger. For that type of claim, "a product user's failure to read an allegedly negligent warning, not the warning itself, is considered the proximate cause of an injury resulting from product

6

misuse." *Henry v. Gen. Motors Corp.*, 60 F.3d 1545, 1548 (11th Cir. 1995) (per curiam) (applying Georgia law). However, Plaintiff does not assert such a claim here. Rather, Plaintiff contends that he never read the warnings because Harley-Davidson failed to communicate them adequately. "Failure to read a warning does not bar recovery when the plaintiff is challenging the adequacy of the efforts of the manufacturer or seller to communicate the dangers of the product to the buyer or user." *Wilson Foods Corp.*, 218 Ga. App. at 75, 460 S.E.2d at 534 (alteration in original) (internal quotation marks omitted); *accord Rhodes v. Interstate Battery Sys. of Am., Inc.*, 722 F.2d 1517, 1519 (11th Cir. 1984) (applying Georgia law). Therefore, the Court finds that Plaintiff's failure to read the warnings does not bar recovery in this case.[2]

"Failure to communicate an adequate warning involves such questions . . . as to location and presentation of the warning." *Wilson Foods Corp.*, 218 Ga. App. at 75, 460 S.E.2d at 534. Georgia courts have uniformly held that,

> It is a jury question whether or not the manufacturer was negligent in failing to place a warning in such position, color and size print or to use symbols which would call the

---

[2] Notably, "where [a] plaintiff alleges that a warning is inadequate because it was not effectively communicated—a presentation and location of warnings case—the plaintiff's failure to read the warning may be [circumstantial] evidence of the inadequacy of the warning." *Wilson Foods Corp.*, 218 Ga. App. at 75, 460 S.E.2d at 534 (second alteration in original) (internal quotation marks omitted).

7

>    user's attention to the warning or cause the user to be more likely to read the label and warning than not.

*Camden Oil Co. v. Jackson*, 270 Ga. App. 837, 841, 609 S.E.2d 356, 359 (2004) (internal quotation marks omitted); *accord Wilson Foods Corp.*, 218 Ga. App. at 75, 460 S.E.2d at 534; *but see Thornton v. E.I. Du Pont De Nemours & Co.*, 22 F.3d 284, 289 (11th Cir. 1994) (applying Georgia law and finding that plaintiff's repeated failure to read label *on* product justified summary judgment in favor of defendant as to plaintiff's claim that defendant failed to adequately communicate dangers of product). Here, there are genuine issues of material fact as to the adequacy and reasonableness of Harley-Davidson's means and method of conveying the warnings. Based on the present record, a reasonable factfinder could conclude that Harley-Davidson failed to place useful load information regarding the Ultra Classic on the Ultra Classic where a user would likely see it.

Genuine issues of material fact also exist as to whether Harley-Davidson's alleged failure to adequately communicate the dangers of the Ultra Classic proximately caused the accident in question. Construing the evidence in the light most favorable to Plaintiff, the record establishes that (1) Plaintiff did not read any of the warnings located in the Owner's Manual or on the Ultra Classic; (2) Plaintiff would have understood any warning about overloading the Ultra Classic if it had been adequately communicated; (3) a

8

reasonable factfinder could conclude that Harley-Davidson did not adequately communicate the warnings; and (4) Plaintiff could have avoided the accident if he had not overloaded the Ultra Classic.

Based on the foregoing, Harley-Davidson's summary judgment motion as to Plaintiff's failure to warn claim is denied.

CONCLUSION

As discussed above, the Court finds that genuine issues of material fact exist as to whether Harley-Davidson adequately communicated the dangers of overloading the Ultra Classic, and whether Harley-Davidson's alleged failure to warn proximately caused the accident in question. Accordingly, Harley-Davidson's Motion for Partial Summary Judgment (Doc. 75) as to Plaintiff's failure to warn claim is denied.

IT IS SO ORDERED, this 7th day of July, 2010.

                                        S/Clay D. Land
                                          CLAY D. LAND
                           UNITED STATES DISTRICT JUDGE